**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 19-01228-5-JNC |
| CAH ACQUISITION COMPANY # 4, Inc., | ) | |
| d/b/a Drumright Regional Hospital, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**EMERGENCY MOTION TO DISMISS CHAPTER 11 CASE**
**WITH BRIEF IN SUPPORT**

The City of Drumright, Oklahoma ("Drumright"), First Liberty Bank ("First Liberty"), and

C. David Rhoades, in his capacity as a court-appointed receiver over all assets and business

operations of CAH Acquisition Company # 4, Inc. (the "Receiver"), hereby request that the Court

immediately dismiss this proceeding pursuant to 11 U. S. C. § 1112(b). In support of this motion,

Drumright, First Liberty, and the Receiver state and allege as follows:

## PARTIES AND PRIOR PROCEEDINGS

1.      CAH Acquisition Company # 4, Inc. ("CAH 4"), is a corporation organized under

the laws of the State of Oklahoma.

2.      On February 2, 2018, CAH 4's corporate status was suspended by the Oklahoma

Secretary of State upon order of the Oklahoma Tax Commission for failure to comply with

Oklahoma tax requirements. *See* Certificate of Suspension from Oklahoma Secretary of State,

attached hereto as "Exhibit 1." CAH 4 was not a corporation in good standing as of the date of

filing this Chapter 11 proceeding and is not a corporation in good standing as of the date of this

motion. *See* Exhibit 1.

3.      CAH 4 operates the Drumright Regional Hospital (the "Hospital") in Drumright,

Oklahoma.

4. The Receiver was appointed over the assets and the entity that is the Debtor under an order entered in Case No. CJ-2019-0001 before Judge Kelly Hake (the "Civil Case"), currently pending in the District Court of Creek County, Oklahoma (the "State Court"). The Order Appointing Receiver, filed February 8, 2019, (the "Order"), is attached hereto as "Exhibit 2."

5. Drumright is an Oklahoma municipal governmental corporation created pursuant to 11 O.S. §§ 1-101 *et seq.* Drumright was the plaintiff in the Civil Case.

6. First Liberty is an Oklahoma banking corporation and holds three promissory notes from CAH 4 in the aggregate amount of $8,277,500.00. These notes are currently in default. Subject only to the Receiver's liens, First Liberty holds the first mortgage and first security interest in all of CAH 4's assets.

7. Jorge Perez, purporting to be the Chairman of the Board of CAH 4, filed a voluntary Chapter 11 petition on behalf of CAH 4 on March 17, 2019.

## FACTUAL BACKGROUND

8. In October of 2007, CAH 4 purchased the assets of the Hospital from the Drumright Municipal Healthcare Authority, a public trust and agency of the State of Oklahoma.

9. At all times material, the Hospital has been designated as a Critical Access Hospital ("CAH") by the Centers for Medicare & Medicaid Services ("CMS"), which is part of the U.S. Department of Health and Human Services. This certification is a vital asset to the Hospital and the citizens of Drumright.

10. CAHs are rural hospitals that receive cost-based reimbursement from CMS for Medicare services and from some states for Medicaid services. CAHs are paid for most inpatient and outpatient services to Medicare patients at 101% of reasonable, approved costs.

11. First Liberty holds three promissory notes from CAH 4: that certain promissory note, dated April 29, 2014, in the amount of $7,500,000.00; that certain promissory note, dated

April 29, 2014, in the amount of $500,000.00; and that certain promissory note, dated July 7, 2016, in the amount of $277,500.00.

12.    The aforementioned notes are secured by two mortgages, filed of record, in the records of the County Clerk of Creek County, Oklahoma.

13.    CAH 4 defaulted on the aforementioned notes as of November 15, 2018. First Liberty gave CAH 4 its notice of intent to foreclose by power of sale on December 11, 2018.

14.    The uncontroverted evidence presented at the hearing in the Civil Case proved that the Debtor and its chosen management companies had grossly mismanaged the Hospital and that the circumstances were dire at best. That evidence established that at the time of the hearing and as a direct result of this debtor's conduct and its failure to pay vendors:

a.    The emergency room was almost completely out of blood;

b.    The Hospital could not buy basic medicines and supplies;

c.    The local fire department had been required to deliver toilet paper;

d.    The Hospital could not buy food for patients and citizens of the community were required to donate basic food supplies;

e.    The operating room had ceased to function as a result of a lack of basic medicines and supplies;

f.    The Hospital was unable to provide x-rays;

g.    Leased hospital beds had been removed from the Hospital for non-payment;

h.    The Debtor had unlawfully withheld taxes from employees and failed to pay such taxes;

i.    The Debtor withheld funds from employee wages for pension contributions and then unlawfully failed and refused to contribute to the pension

j.      The Debtor withheld funds from employee wages for insurance and then unlawfully failed to provide insurance;

k.      The Debtor had failed to pay applicable malpractice premiums which threatened the resignation of all medical staff and the closing of the hospital which would have caused irreparable harm to the citizens of Drumright;

l.      The acts and actions of the Debtor with respect to the employees are presently under investigation by the Attorney General of the State of Oklahoma;

m.      The Debtor has failed to pay ad valorem taxes and utility bills to the City of Drumright;

n.      The Debtor is delinquent on all payments due and owing the first mortgagee and has failed to provide current financial statements; operating reports, and tax returns.

15.      Prior to the receivership, the Debtor accumulated a substantial amount of unpaid trade debt, the amount of which is still to be determined.

16.      Immediately after the appointment of the Receiver, the Debtor and its affiliated management company Empower HMS and the Debtor's new management company iHealthcare, Inc., willfully took steps to prevent the Receiver from accessing critical patient medical records, online access to critical data, and business records in blatant disregard of the Order.

17.      The Debtor allegedly appointed iHealthcare to operate the hospital on or around Jan 19, 2019. However, at no time from that date until the date of the hearing to consider the appointment of a Receiver did iHealthcare take any action to protect and preserve the operations of the Hospital, contact employees, provide basic medicines and supplies, or in any manner insure the continued existence of the Hospital.

18.      The fact that a Chapter 11 Trustee has been appointed in this case is further evidence of the Debtor's incompetence and dishonesty.

19.     The Order Appointing Receiver was originally entered as a temporary order which afforded the Debtor thirty days to object to or otherwise seek to modify or vacate the order.  The Debtor failed to file or assert any objection to the order within the thirty day period and that order is now a final order.  Likewise, under applicable Oklahoma Law, all orders appointing a receiver are subject to immediate appeal as a matter of right. 12 O.S. § 993.  As of the filing of this Motion, the Debtor has not sought any relief from the Order nor filed an appeal and therefore the same is a final order.

20.     Pursuant to the Order and on February 9, 2019, the Receiver took possession of the Hospital and hired Bristow Endeavor Healthcare, LLC ("BEH"), a new management company, to take over operations the day after the entry of the Order.  As of the filing of this Motion, the Receiver has been in control of the Hospital and the entity that is the Debtor for 54 days.

21.     Pursuant to the Order, the Receiver has full authority to remove any and all directors from the Debtor's Board of Directors.  On March 7, 2019, the Receiver filed a Notice of Action wherein the Receiver removed all of the Debtor's Directors, including the Chairman of the Board, Jorge Perez. *See* Notice of Receiver Action, attached hereto as "Exhibit 3."

22.     Since the appointment of the Receiver, the Receiver has taken all steps necessary to insure the continued operations of the hospital and preservation of the license including, but not limited to: conferring with state officials for the purpose of obtaining an assignment of the license to the Receiver; securing bank accounts; substituting his name on certain bank accounts; initiating a billing system notwithstanding the Debtor's efforts to frustrate that process; securing Receivership loans in excess of $500,000 pursuant to court order to make payroll; purchasing badly needed medicines and supplies; purchasing food for patients and staff; and paying past due malpractice insurance which prevented a wholesale walk out by all employees.  Removing the

Receiver at this critical juncture would incur the risk of undoing the substantial progress to date and would cause irreparable harm to all creditors and interested parties.

## SUMMARY OF RELIEF REQUESTED

Drumright, First Liberty, and the Receiver seek an order dismissing this case.

## ARGUMENT AND AUTHORITIES

There are four separate and independent grounds on which this Court can, and should, dismiss this case. First, the Order prevents anyone except for the Receiver filing bankruptcy on behalf of CAH 4. Second, CAH 4 is a suspended corporation and lacks the capacity to act. Third, the resolution purporting to authorize this filing fails to comply with the bylaws of CAH 4. And finally, dismissal is in the best interests of the creditors.

**I.      Only the Receiver May File Bankruptcy on Behalf of CAH 4.**

As an initial matter, the determination of who may file for bankruptcy is a matter of local, and not federal, law. *Price v. Gurney*, 324 U.S. 100, 107 (1945). And "[i]f the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Id.* at 106; *see also Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994) ("A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so, and the authorization must derive from state law.").

After a contested evidentiary hearing, Creek County District Court Judge Kelly Hake validly determined that only the Receiver could authorize CAH 4's bankruptcy. The Order provides:

> The Receiver is empowered to file a voluntary petition for relief pursuant to 11 U.S.C. §301 et seq. for CAH 4 if such is deemed appropriate **in the sole discretion of the Receiver** in the exercise of his business judgment. CAH 4's officers, directors, managers, members and/or shareholders are specifically prohibited from taking any action inconsistent with the terms of this Order and from authorizing any action by CAH 4

inconsistent with their respective by-laws or operating agreements as of the entry of this Order.

*See* Exhibit 2, ¶ 36 (emphasis added). The bylaws, as they existed on February 9, 2019, when the Order was entered, do not authorize anyone to file bankruptcy on behalf of CAH 4 and the Receiver did not exercise his discretion to file this proceeding. Further, CAH 4's shareholders are specifically prohibited from taking any action that is inconsistent with the Order granting the Receiver the ability to file bankruptcy in his sole discretion. The filing of this case expressly violates a binding, state court order, and this case should consequently be dismissed.

## II. CAH 4 Lacks Corporate Capacity to Act.

As noted above, the determination of who may file for bankruptcy is a matter of local law. *Price*, 324 U.S. at 107. Under Oklahoma law, a suspended corporation cannot file for bankruptcy. The State of Oklahoma has determined that Oklahoma corporations which fail to pay the requisite taxes forfeit their corporate rights to act. 68 O.S. § 1212(A). CAH 4's corporate status is currently suspended by the Oklahoma Tax Commission for failure to comply with Oklahoma tax requirements. *See* Exhibit 1. Because CAH 4 is suspended, it has forfeited all corporate rights. Where a corporation does not file the required report and pay the required tax, the Oklahoma Tax Commission "may enter an order directing the suspension of the charter or other instrument of organization, under which the corporation, association or organization may be organized, and the forfeiture of all corporate or other rights inuring thereunder." 68 O.S. § 1212. Further, as a matter of Oklahoma law, court documents filed by a suspended corporation have no legal force. *See Aviation Data Serv., Inc. v. A.C.E. Copier Serv., Inc.*, 1992 OK CIV APP 41, 832 P.2d 31, 32 (refusing to consider an appellate brief filed by a suspended corporation).

Because CAH 4 forfeited all corporate rights, it cannot undertake a corporate act. The filing of a bankruptcy petition is a corporate act: "It was well-settled under earlier judicial decisions that the filing by a corporation of a voluntary petition in bankruptcy is a corporate act." 2 COLLIER

ON BANKRUPTCY P 109.02 (16th ed. 2018). Other bankruptcy courts have recognized that a suspended corporation cannot file for bankruptcy:

> [S]uspension strips a corporation of its capacity to take advantage of the courts. During the period when a corporation's powers are suspended, the corporation may neither prosecute nor defend an action, nor may it appeal from an adverse judgment to seek other relief such as a writ of mandate. The incapacity to sue, defend or appeal under state law will also preclude a corporation from suing, defending or appealing in federal court, including in bankruptcy proceedings. In fact, a corporation may be precluded from bringing suit even on a federal cause of action, the enforcement of which is important to the economy and public policy. Attorneys who represent a suspended corporation in court proceedings may be subject to sanctions.

*In re W. Coast Interventional Pain Med., Inc.*, 435 B.R. 569, 576–77 (Bankr. N.D. Ind. 2010) (citing *Keeping the Debtor in 'Suspense': California Corporate Status in Chapter 11*, Vol 30 Cal. Bankr. J. No. 4 (2010)).

Further, under Oklahoma law, CAH 4's officers cannot act on its behalf. When a corporation's charter is suspended, it ceases to have the capacity to do business and corporate officers "cannot legally act for the corporation." *K.J. McNitt Const., Inc. v. Economopoulos*, 2001 OK CIV APP 45, ¶ 4, 23 P.3d 983, 984. Any person who attempts to exercise the powers of a corporation after corporate rights have been forfeited is guilty of a misdemeanor. 68 O.S. § 1212(B). As a consequence, Jorge Perez cannot sign any documents on behalf of CAH 4. His signature as the "authorized representative of CAH 4," purporting to file this case, is null and void.

Because CAH 4 lacks corporate capacity to act, this case should be dismissed.

## III.    This Filing Violates the Bylaws of CAH 4.

As a general rule, a resolution by the board of directors is required to file bankruptcy. "The business and affairs of every corporation organized in accordance with the provisions of the Oklahoma General Corporation Act shall be managed by or under the direction of a board of directors." 18 O.S. § 1027. The "business and affairs" of a corporation include the filing of a bankruptcy petition:

It is beyond cavil that the filing of a bankruptcy petition is an integral part of the "business and affairs" of a corporation. Additionally, there is ample support in case law for the proposition that, in the absence of restrictions, the power to file a voluntary petition in bankruptcy on behalf of a corporation rests with the Board of Directors. Accordingly, it is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors.

*Matter of Giggles Rest., Inc.*, 103 B.R. 549, 553 (Bankr. D.N.J. 1989)(internal citations omitted).

Pursuant to the Order, the Receiver removed all directors from the Debtor's Board of Directors on March 7, 2019. Thus, CAH 4 may only file for bankruptcy if otherwise authorized by its bylaws.

The stockholders of CAH 4 may take action without a meeting or notice if there is a statement of action, in writing, setting forth the action and signed by **all** the holders of outstanding stock entitled to vote. *See* Amended and Restated Bylaws of CAH 4, § 12, attached hereto as "Exhibit 4." Therefore, unless all of the stockholders of CAH 4 agreed to this filing in writing, CAH 4 could not file this case.

The resolution purporting to authorize this filing was **not** written by the stockholders of CAH 4. Instead, it was a resolution of Health Acquisition Company, LLC ("HAC"). *See* Resolution of Health Acquisition Company, LLC, dated March 12, 2019, attached hereto as "Exhibit 5." HAC purports to be "the owner of 80% of the interest" in CAH 4. Because HAC does not own all of the stock in CAH 4, any resolution purporting to take action on behalf of CAH 4 is not effective.

*In re Sino Clean Energy, Inc.*, is a factually analogous case. 901 F.3d 1139, 1140 (9th Cir. 2018). There, the debtor corporation was forced into a receivership by a Nevada state court due to mismanagement and fears of insolvency. *Id.* Pursuant to the court's order appointing receiver, the receiver could remove and replace the debtor's board of directors, which he did. *Id.* at 1141. Later, the former board filed a bankruptcy petition on behalf of the debtor. *Id.* The receiver moved to dismiss, and the bankruptcy court granted the motion, finding that the former board had no

authority to file for bankruptcy on the debtor's behalf. *Id.* The former board appealed, and the district court affirmed. *Id.* The former board again appealed, and the Ninth Circuit affirmed, holding that an individual who is not authorized to "file bankruptcy on behalf of the corporation [i]s an impostor, and the action [i]s null and void as fraudulently filed." *Id.* at 1142 (internal quotations omitted).

So too here, the filing was not authorized by the bylaws of CAH 4 and this case should consequently be dismissed.

## IV.    Dismissal is in the Best Interests of the Creditors.

As noted above, the Receiver has already taken significant steps to insure the continued operations of the Hospital. He is or soon will be the state approved assignee of the license and he has gained the trust and confidence of the employees by virtue of his payment of payroll obligations and malpractice premiums. This Debtor is a suspended Oklahoma Corporation; all of the employees are located in Oklahoma; the overwhelming majority of the creditors are in Oklahoma; the newly appointed operator of the hospital is in Oklahoma; and all of the assets including real estate and equipment are located in Oklahoma. For the first time in a long time, the Hospital is on a positive trajectory.

It is in the best interests of all creditors that the case be dismissed so the Receiver can continue to preserve and protect the Hospital and its operations. When determining whether to dismiss a case, the Court must balance the equities to determine what best serves the creditors and the estate. H. R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S. Code Cong. & Ad. News 5787. Here, equity requires that the Receiver be allowed to continue improving the Hospital and therefore improving the estate for the benefit of CAH 4's creditors. First Liberty supported the Receiver's appointment in the State Case, and now joins the Receiver in seeking the dismissal of this case.

## CONCLUSION

Because the Order prevents anyone except for the Receiver filing bankruptcy on behalf of CAH 4, because CAH 4 lacks the corporate capacity to act, because the resolution purporting to authorize this filing fails to comply with the bylaws of CAH 4, and because dismissal is in the best interests of the creditors, this case must be dismissed.

DATED: April 5, 2019

AYERS & HAIDT, P.A.

*/s/ David J. Haidt*
By: David J. Haidt
N.C. State Bar No. 22092
Attorneys for City of Drumright, First Liberty Bank
   and C. David Rhoades
Post Office Box 1544
New Bern, North Carolina 28563
(252) 638-2955 telephone
(252) 638-3293 facsimile
davidhaidt@embarqmail.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 19-01228-5-JNC |
| CAH ACQUISITION COMPANY # 4, Inc., | ) | |
| d/b/a Drumright Regional Hospital, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**NOTICE OF EMERGENCY MOTION TO DISMISS**
**PURSUANT TO 11 U.S.C. § 1112(b)**

NOTICE IS HEREBY GIVEN of that EMERGENCY MOTION TO DISMISS the pending Chapter 11 proceeding filed simultaneously herewith in the above captioned case by City of Drumright, Oklahoma, First Liberty Bank and C. David Rhoades ("Movant"); and,

FURTHER NOTICE IS HEREBY GIVEN that the pursuant to the Motion, the Movant is seeking the immediate dismissal of this Chapter 11 proceeding in accordance with the provisions of 11 U.S.C. § 1112(b); and

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no response and request for a hearing is made by a party in interest in writing to the Clerk of this Court by **5:00 p.m., April 9, 2019**. A hearing on the Debtor's Motion will be held on **April 10, 2019, beginning at 1:00 p.m.** in the 2nd Floor Courtroom, United States Bankruptcy Court, 150 Reade Circle, Greenville, North Carolina 27858.

DATE OF NOTICE:  April 5, 2019

AYERS & HAIDT, P.A.

*/s/ David J. Haidt*
By:  David J. Haidt
N.C. State Bar No. 22092
Attorneys for City of Drumright, First Liberty Bank
   and C. David Rhoades
Post Office Box 1544
New Bern, North Carolina  28563
(252) 638-2955 telephone
(252) 638-3293 facsimile
davidhaidt@embarqmail.com

<u>CERTIFICATE OF SERVICE</u>

I, David J. Haidt, Post Office Drawer 1544, New Bern, North Carolina 28563, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 5th day of April, 2019, a member of my office staff served copies of the foregoing Emergency Motion and Notice of Motion on the parties listed by electronic or facsimile and/or regular mail, postage prepaid.

I certify under penalty of perjury that the foregoing is true and correct.

EXECUTED ON:   April 5, 2019

BY:     */s/ David J. Haidt*
        DAVID J. HAIDT
        N.C. State Bar No. 22092

TO:

Bankruptcy Administrator (VIA CM/ECF)

Rayford K. Adams, III, Esq. (VIA CM/ECF)
Attorney for Debtor

See attached Exhibit "A"

**EXHIBIT**

exhibit 1



### OFFICE OF THE SECRETARY OF STATE



## CERTIFICATE OF SUSPENSION
## __DOMESTIC FOR PROFIT BUSINESS CORPORATION__

*I THE UNDERSIGNED, Secretary of State of the State of Oklahoma, do hereby certify that I am, by the laws of said state, the custodian of the records of the state of Oklahoma relating to the right of corporations to transact business in the state and am the proper officer to execute this certificate.*

*I FURTHER CERTIFY that* __CAH ACQUISITION COMPANY # 4, INC.__ *is a corporation duly organized and existing under and by virtue of the laws of the state of Oklahoma.*

*I FURTHER CERTIFY that said corporation was suspended by the Secretary of State on the 2nd day of February, 2018 upon order of the Oklahoma Tax Commission for failure to comply with the requirements of the Oklahoma Tax Act and is not a corporation in good standing according to the records of this office.*



*IN TESTIMONY WHEREOF, I hereunto set my hand and affixed the Great Seal of the State of Oklahoma, done at the City of Oklahoma City, this 18th, day of March, 2019.*

*Secretary Of State*

EXHIBIT

2

FILED IN DISTRICT COURT
CREEK COUNTY BRISTOW OK

FEB 0 8 2019

TIME_____ 10:06 Am
Amanda VanOrsdol, Court Clerk



IN THE DISTRICT COURT OF CREEK COUNTY
BRISTOW DIVISION
STATE OF OKLAHOMA

THE CITY OF DRUMRIGHT, as                   )
successor-in-interest to the Drumright      )
Municipal Healthcare Authority,             )
                                            )
            Plaintiff,                      )
                                            )        Case No. CJ-2019-0001
v.                                          )
                                            )        Judge Kelly Hake
CAH ACQUISITION COMPANY # 4,                )
INC., a domestic corporation, and          )
FIRST LIBERTY BANK, a domestic             )
banking corporation,                        )
                                            )
            Defendants.                     )

## ORDER APPOINTING RECEIVER

### NOTICE TO FILE OBJECTIONS

**THIS ORDER WAS ENTERED AS A TEMPORARY ORDER. UNLESS THERE IS AN OBJECTION FILED BEFORE THE LATER OF (1) 30 DAYS AFTER THE ENTRY OF THIS ORDER OR (2) 21 DAYS AFTER YOU ARE SERVED HEREWITH, THEN THIS ORDER SHALL BECOME A FINAL ORDER WITHOUT THE NEED FOR ANY FURTHER HEARING.**

On this 7th day of February, 2019, before the undersigned Judge of the District Court in and for Creek County, State of Oklahoma, the Plaintiff's Petition and Application for Appointment of Receiver and Injunctive Relief (the "Application")[1] filed by Plaintiff, the City of Drumright, as successor-in-interest to the Drumright Municipal Healthcare Authority on February 5, 2019, comes before the Court for determination. Having reviewed the pleadings and evidence submitted to the Court, and having heard and considered the arguments of counsel, the Court grants the Motion and finds as follows:

A.      The Drumright Municipal Healthcare Authority (the "Authority") was created pursuant to a Trust Indenture dated December 26, 2001, to plan, finance, establish, develop,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

construct, enlarge, remodel, improve, make alterations, extend, maintain, equip, operate, lease, furnish, and regulate medical facilities. The Authority was a public trust and an agency of the State of Oklahoma under Title 60 of the Oklahoma Statutes and was governed by a board of seven trustees.

B.     Utilizing HUD guaranteed loan proceeds, the Authority constructed a state-of-the-art hospital known as Drumright Regional Hospital (the "Hospital").

C.     In October of 2007, the Authority sold the assets of the Hospital to CAH Acquisition Company # 4, Inc. ("CAH 4"), for cash and the assumption of an outstanding secured mortgage loan for the sum of approximately $7.6 million. The clear, explicit and implicit intent of the sale was to preserve the continued operation of a rural hospital for the benefit of Drumright and the surrounding areas.

D.     The sale of the Hospital to CAH 4 included express and implied covenants that the Hospital would be operated in a responsible and professional manner for the health and well-being of the citizens of Drumright and all surrounding areas.

E.     The Authority is no longer in existence. Drumright has succeeded to all of the Authority's title, rights, and interests in and to the contract of sale including express and implied covenants which relate to or arise out of the sale of the Hospital described above.

F.     At all times material, the Hospital has been designated as a Critical Access Hospital ("CAH") by the Centers for Medicare & Medicaid Services ("CMS"), which is part of the U.S. Department of Health and Human Services. This certification is a vital asset to the Hospital and the citizens of Drumright.

G.     As a result of the acts and actions of CAH 4, there is an immediate threat to the health and safety of the Hospital's current patients and citizens of Drumright who might need

2

and require urgent medical care. CAH 4 has created an immediate and imminent threat to the safety and well-being of the citizens of Drumright and surrounding areas. CAH 4's actions have created a threat of a possible shutdown of the Hospital. If that were to occur, the Hospital would lose its Critical Care Certificate and related licensing by the state of Oklahoma. Such an event would cause irreparable harm to safety and well-being of the citizens of Drumright and surrounding areas.

It is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.    Pursuant to the provisions of 12 O.S. § 1551 *et seq.*, C. David Rhoades (the "Receiver") is appointed as Receiver for entity CAH 4, its assets and its business operations (collectively, the "Estate"). The Estate encompasses all rights of the CAH 4 as a going concern business and all rights of CAH 4 in and to any assets in which CAH 4 has any right, title or interest, including, without limitation, all rights of CAH 4 to conduct its business as a hospital facility licensed by the State of Oklahoma.

2.    Defendant shall promptly deliver to the Receiver immediate access to, and control over CAH 4, the Hospital and the Estate.

3.    The appointment of the Receiver shall become effective at the time that the Oath of Receiver and the Bond is filed with the Court. The Receiver may execute the Oath of Receiver in person and will be filed with the Court, with the originally signed Bond or Undertaking to be filed with the Court as promptly thereafter as reasonably possible.

4.    The Receiver shall have all the powers of a receiver as provided for in 12 O.S. § 1551 *et seq.* The Receiver is specifically given direction and authority to accomplish the following regarding CAH 4, the Hospital and the Estate:

(a)    To take custody, control and possession of the Hospital;

3

(b)     To protect the health, safety, and welfare of the patients of the Hospital;

(c)     To conserve, hold, operate and manage the Hospital and or hiring a competent management company of his choice, pending further action by this Court to prevent any irreparable loss, damage or injury to the Hospital;

(d)     To collect all rents, fees, charges and other income generated by the Hospital through the operation of the Hospital;

(e)     To make such payments and disbursements as may be necessary and advisable for the preservation and operation of the Hospital as may be necessary and advisable in discharging his duties as Receiver;

(f)     To retain and employ attorneys, accountants, and other persons as may be advisable or necessary in the management, conduct, control or custody of the Hospital on the terms more specifically set forth hereafter;

(g)     Shall have the right to borrow funds by Receiver's Certificate up to $100,000* $250.000 from a lender of the Receiver's choice, on terms agreeable to both parties, to carry out the duties and responsibilities of the Receiver, including, without limitation, to defray the operating costs of the Hospital and to defray any expenses incurred in connection with the ordinary course of administration of the Hospital. This shall be secured by a first priority lien on the Hospital, subject only to the fees and expenses of the Receiver. If additional funds are required, then the Receiver shall file a Motion to issue additional Receiver's Certificates and receiver further approval by this Court;

(h)     To institute, prosecute, defend, compromise, adjust, intervene in or become a party to such actions or proceedings in any state court, federal court or United

4

States Bankruptcy Court as may in the Receiver's opinion be necessary or proper for the protection, maintenance and preservation of the Estate or for carrying out of the terms of this Order;

(i) The Receiver shall, as part of his duties, proceed to analyze the assets of the receivership estate and if warranted in his best business judgment, proceed to find qualified buyers of the assets. The Receiver has the specific power to sell the assets as a "transfer" under 12 O.S. § 1554. The Receiver shall petition the Court for permission to enter into contracts for the disposition of assets that have a value in excess of $10,000, but not for assets whose value is less than $10,000;

(j) Reject, and not perform pursuant to, any unexpired leases or executory contracts the Receiver determines to be burdensome to the receivership estate; and

(k) To exercise those powers necessary to implement his conclusions with regard to disposition of this receivership pursuant to the orders and directives of this Court;

5. The Receiver is authorized to operate the Hospital and any other business of the Estate in its current name, employer identification number, and Medicare and Medicaid numbers. The Receiver shall collect all payments, receivables, reimbursements, revenues, income, issues, royalties, profits and other benefits derived therefrom, including, but not limited to, those paid or payable by Medicare and Medicaid programs and other payors. If the Receiver determines that it is necessary and in the best interests of the Hospital, the Receiver shall be authorized to enter into one or more consulting, administrative, management and/or other support services agreement(s) for the Hospital with firms acceptable to the Receiver upon such terms and conditions as the Receiver deems reasonable, including (without limitation) the provision of consulting, administrative, management and/or other support services, responsibility for care,

accounts payable, accounts receivable and monthly financial statements. The Receiver is authorized to pay reasonable compensation to such management firms and reimburse them for reasonable out of pocket costs and expenses.

6. The Receiver may apply income from the operation of the Estate, as follows: 1) the Receiver's approved fees and expenses including the Receiver's Certificate; 2) the current operating expenses of the Receivership in the ordinary course of business; 3) to the obligations owed to Bank under the Loan Documents; and 4) to such other obligations incurred in accordance with the terms of the Courts Order. The Receiver may maintain sufficient cash on hand to enable the Receiver to meet continuing operating expenses, the payment of which is authorized herein, in an amount determined by the Receiver.

7. The Receiver is authorized to conduct a forensic accounting of Defendant, including but not limited to property, liabilities and funds of the Hospital Assets and any prior uses thereof;

8. Defendant shall provide the Receiver with a complete accounting of the funds expended from Defendant and any explanations for the transactions requested by Receiver;

9. The authority granted to the Receiver will be self-executing, unless the action specifically requires subsequent authorization from the Court

10. The Receiver is authorized and directed to obtain and maintain such licenses, permits and certificates, including, but not limited to, Certificates of Need or other authorizations as may be required under state, federal or local law to operate, maintain and collect the revenues and income generated by the Estate. In order to immediately safeguard resident and patient well-being, any state, county or local regulatory agencies shall issue the Receiver a temporary permit

or license while the Receiver proceeds with the process, under applicable state law, of obtaining or preserving all required licenses and permits in a timely manner.

11. The Receiver is authorized, to institute, prosecute, defend, compromise, and/or intervene in or become a party to such actions or proceedings in state or federal courts necessary for the protection, maintenance and preservation of the Hospital Assets and to carry out the terms of the Court's Order Appointing Receiver, including but not limited to the collection of all sums due to Defendant from the Hospital's operations. In this regard the Court takes judicial notice of the law applicable to assignments of Medicare and/or Medicaid payments and hereby vests Receiver with the following special rights and authorities related to the collection of any and all sums due to Defendant from Medicare or Medicaid:

      a. This Order Appointing Receiver is designated as a Court Order in compliance with 42 U.S.C. § 1395(g)(c) which, in pertinent part, states that nothing in the anti-assignment provisions of 42 U.S.C. § 1395(g) shall be construed to prevent the making of a direct payment in accordance with an assignment from the provider if such assignment . . . is established by or pursuant to the order of a Court of competent jurisdiction.

      b. Receiver is hereby provided such Order and Medicare and/or any servicer administering payments on behalf of Medicare may pay directly to Receiver any and all sums formerly due and payable to Defendant, CAH Acquisition Company #4, Inc. d/b/a Drumright Regional Hospital.

12. The Receiver shall have the sole power and authority, consistent with the terms of this Order, (i) to oversee and make all final decisions concerning the financial affairs relating to the Estate, (ii) to remove any existing directors, and identify and appoint qualified individuals to serve as members of the Board of Directors of the Defendant, (iii) analyze, market and sell any or all of the Assets or any other property of the Estate, and (iv) manage and operate the Estate on a daily basis.

13. Intentionally left blank.

7

14.     CAH 4, its officers, directors, agents, servants, employees, assigns, attorneys, and all persons acting on its behalf, under its direction and control, and/or in active concert or participation with CAH 4, shall promptly deliver to the Receiver:

(a)     The identity of all bank, securities, brokerage or other accounts to which any rents, fees, proceeds, income or other cash from the Hospital were deposited and all funds contained in any such accounts, along with all internet login and password codes;

(b)     Custody, possession and control of the Hospital, its business operations, and any rents, fees, proceeds, income and other cash from the Hospital, including all accounts receivable from the operation of the Hospital;

(c)     Custody, possession and control of all funds, assets, books and records as are necessary to obtain an accounting of the amount, source and disposition of rents, fees, proceeds, income and other cash from the Hospital; and

(d)     All documents, information, personal property and other materials and information necessary, including all internet login and password codes, to the continued operation of the Hospital and its business operations.

15.     The Receiver is authorized to maintain appropriate real property insurance for the Hospital Assets, public liability insurance, workmen's compensation insurance, fire and extended coverage insurance, burglary and theft insurance, malpractice insurance and other types of insurance normally obtained in connection with the operation and management of the Hospital Assets, and the Receiver is authorized to continue any current policies in place, and to purchase further insurance as the Receiver deems appropriate;

16.     CAH 4, its officers, directors, agents, servants, employees, assigns, attorneys, and all persons acting on its behalf, under its direction and control, and/or in active concert or participation with any Defendant, are hereby enjoined from directly or indirectly from the following and shall:

(a)     refrain from interfering with Receiver taking such custody, control or possession of the Hospital and its business operations and from interfering in any manner, directly or indirectly, with such custody, possession and control of said Receiver or the continued operation of the Hospital;

(b)     complete and file such change(s) of information and other notices and filings requested by the Receiver pertaining to Medicare and Medicaid certifications and enrollment, licensure, and notices and filings necessary to remove the current managing, controlling, authorized and delegated parties, officials and representatives relating to the Hospital, and substituting the Receiver and designees;

(c)     fully cooperate with the Receiver and all others to effectuate a smooth and orderly transition of the Hospital and control of its business operations to the Receiver without disruption or impairment of the Hospital or its business operations;

(d)     doing anything that would disrupt, impair, adversely affect, or otherwise complicate the smooth and orderly transition of the Hospital and control of its operations to the Receiver, or continued and ongoing operations of the Hospital by the Receiver, as contemplated by this Order; (e) terminating or changing the terms of employment of employees working at or for the Hospital, soliciting the employees to cease working at or for the Hospital and Receiver, or otherwise

9

interfering with the employees continued and ongoing work at or for the Hospital and Receiver; and

(f)    transferring, dissipating or otherwise disposing of any of the property of the Estate and its proceeds, (ii) transferring, concealing, destroying or making any other disposition of any personal or corporate assets, including, but not limited to, funds in bank or brokerage accounts, automobiles or any other real or personal property owned, possessed or controlled by any of them, without prior authorization from the Court,

17.    CAH 4, its subsidiaries, officers, directors, agents, servants, employees, assigns, attorneys, and all persons acting on its behalf, under its direction and control, shall fully cooperate with and assist the Receiver and take no action, directly or indirectly, to hinder or obstruct the Receiver in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession or control exercised by the Receiver. CAH 4 shall deliver to the Receiver the originals or true and correct copies of all books, filings, records, contracts, documents, data and other materials relating to the Hospital, including without limitation: vendor contracts; HIPAA business associate agreements; residency and admissions agreements; resident records; policy and procedure manuals relating to the operation of the Hospital; employment records; employee health and other benefits information, including, without limitation, employee health and benefit plan documents; financial, accounting, tax and corporate records; balance sheets; accounts receivable and accounts payable data; billing and collection data; resident trust funds information; payor contracts; licenses; registrations; accreditations; certifications; certificates of occupancy; other governmental approvals; correspondence, statements of deficiencies, plans of correction and other survey and inspection documentation, reports and

other communications with federal and/or state regulators; Medicare and Medicaid contracts, cost reports, certification documentation, National Provider Identifier Numbers, other provider numbers, and Electronic Data Interchange ("EDI") Submitter identification numbers; Electronic Funds Transfer ("EFT") authorization agreements, numbers and arrangements; website information; warranty and guaranty records; valuations, appraisals and feasibility studies, reports and surveys; environmental, structural and physical plant audits and reports; architectural and engineering plans, drawings and specifications; property surveys; title insurance policies; other insurance policies; domain name, trade name, trademark, service mark, and copyright information; telephone and facsimile numbers; email addresses; and all passwords and access codes relating to the foregoing.

18. **All banks, brokerage firms or other financial institutions that are served with a copy of this Order shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his direction and producing records relating to the accounts of CAH 4 or the Hospital and its business operations. Upon presentation of this Order, all persons or entities, including banks, shall turn over all funds, operating bank accounts, and safety deposit boxes related to or associated with the Assets, to the Receiver without undue delay,** and shall delete all existing designated signatories on such bank account(s). Facsimile or electronic transmission of a copy of this Order shall constitute service on any such banks, brokerage firms or other financial institutions.

19. The Receiver is authorized and directed to obtain such licenses, permits, certificates or other authorizations as may be required under state, federal or local law to operate, maintain and collect the revenues and income generated by the Hospital.

20.     The Receiver shall have the right to issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate to the extent he deems necessary for the administration of the receivership.

21.     The Receiver is specifically vested with the discretion to be exercised in his business judgment to either continue the operations of the Hospital in their ordinary course to preserve going concern value or to reduce such operations to the point of cessation.

22.     The Receiver is covered by the doctrine of Judicial Immunity and all his actions shall be governed by the Business Judgment Rule. The Receiver shall at all times exercise reasonable care in employing its business judgment to administer the Estate. Unless a loss is compensable by the Receiver's bond, the Receiver shall not be personally responsible for financial losses of the Estate.

23.     The Receiver is authorized in its sole discretion and without further order of the Court to remove or abandon any property from the Estate that it deems burdensome or of inconsequential value, whereupon such property shall re-vest in CAH 4. Abandonment shall be effective upon Notice to the parties.

24.     The Receiver's fee shall be $380 per hour. In addition to its hourly fee, the Receiver shall be entitled to reimbursement of reasonable out-of-pocket expenses. The Receiver shall be authorized to utilize others on its staff to assist him in the performance of such duties and shall be compensated for the time reasonably spent by such persons at their normal hourly rates, which range from $50 to $340 per hour. The Receiver may apply to the Court for compensation, from time to time, in a reasonable sum to be determined by the Court. The Receiver is authorized to utilize others on his staff to assist him in the performance of his duties and such staff shall be compensated for the time reasonably spent by such persons at their normal

hourly rates in the ordinary course without prior approval of the Court. The Receiver is authorized to hire management and staff to manage and operate the Hospital or retain existing management, which shall be deemed an expense of the receivership. The Receiver is authorized to retain any professionals deemed appropriate in his sole discretion such as attorneys, accountant, or appraisers (collectively the "Professionals") and shall be entitled to reimbursement for reasonable out-of-pocket costs and expenses including the reasonable fees, costs and expenses of the Professionals to the extent required by the Receiver in connection with the performance of his duties as specified herein and the staff, which may be modified by order of the Court upon proper motion, after notice and a hearing. Unless otherwise ordered by the Court, the employment and payment of Professionals and the out of pocket expenses shall not be subject to prior approval by the Court

     25.    The Receiver shall have as of the entry of this Order a valid and perfected lien on the Assets that are the subject of this Order to secure payment to the Receiver of the fees and expenses of the Receiver that are approved by this Court (the "Receiver's Lien"). The Receiver's Lien granted hereby shall be a first lien with priority over all other liens, claims and interests. Dismissal of this case shall not affect the nature, extent or validity of the Receiver's Lien and shall be ineffective to divest this Court of jurisdiction to hear and approve any requested fees and expenses of the Receiver and to discharge the Receiver and any bond.

     26.    In order to promote judicial efficiency, all persons who receive actual or constructive notice of this Order are enjoined in any way from disturbing or in any way interfering with the Receiver's administration of the Estate or from commencing or prosecuting any proceedings (including collection or enforcement proceedings) that involve the Receiver or the Estate, unless such person or persons first obtains the permission of this Court or the

Receiver. All Parties and any other entity given notice of this Order are hereby enjoined from any and all of the following: (1) the commencement or continuation, including the issuance or employment of process, of any judicial, administrative or other action or proceeding against the Assets, the Estate or the Receiver that was or could have been commenced before the entry of this Order, or to recover a claim against the Assets, the Estate or the Receiver that arose before the entry of this Order; (2) any act to obtain possession of, or to exercise control over, the Estate; (3) any act to create, perfect, or enforce any lien against the Estate; (4) any act to create, perfect, or enforce against the Estate any lien to the extent that such lien secures a claim that arose before the entry of this Order; (5) any act to collect, assess, or recover a claim against the Assets, the Estate or the Receiver that arose before the entry of this Order; or (6) the setoff of any debt owing to the Estate that arose before the entry of this Order against any claim owing from the Estate or the Receiver. Further, the officers, directors, managers, members and/or shareholders of the Defendant are specifically enjoined from taking any action (a) inconsistent with the terms of this Order, or (b) not expressly authorized by the by-laws or articles of incorporation of the Defendant as those documents were constituted as of the entry of this Order.

27.     The injunctive relief granted herein may be modified or waived only by order of this Court upon proper motion, after notice and a hearing.

28.     The Receiver may, in its reasonable discretion, and to the extent consistent with the Budget, apply to the Court for the approval or his decision to assume or reject any contracts or leases entered into by CAH 4 related to the Estate, as provided for in Sunflower Oil Co. v. Wilson, 142 U.S. 313, 322, 12 S. Ct. 235, 237, 35 L. Ed. 1025 (1892) and U.S. Trust Co. v. Wabash W. Ry. Co., 150 U.S. 287, 299-300, 14 S. Ct. 86, 90, 37 L. Ed. 1085 (1893). Such application shall be made upon notice to all parties entitled to notice in these proceedings, and

such parties shall have the right to object to such application. No person or entity shall be entitled to rely upon a course of dealing or other implied assumption by the Receiver of any agreement. The Receiver is authorized to: 1) negotiate and enter into new leases, occupancy agreements and contracts in the ordinary course of operating the Hospital and the Estate; 2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business; 3) pay all utilities, expenses and other obligations secured by the assets of the Estate or which may give rise to liens on the same, and all other outstanding obligations to suppliers and services in the ordinary course of business, including, obligations incurred prior to the commencement of the receivership, so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; 4) make repairs necessary to the maintenance of the Estate in order to preserve the same in the ordinary course of business; and 5) comply with all requirements and regulations applicable to the Estate.

29.    Unless and until the Receiver receives Court approval, the Receiver shall not be bound by any contracts, agreements, understandings or other commitments which the Defendant had, or may have had with third parties, whether oral or written. Nothing in this Order constitutes, or shall be construed to constitute, an assumption by the Receiver of any of the contracts or agreements currently existing with respect to the Estate, or the waiver by the Receiver of any default under any such contract or agreement.

30.    This Court explicitly retains jurisdiction, despite any attempted dismissal, to hear and rule on receivership-related issues. *See Brown v. R. L. Bivings*, 316 P.2d 855 (Okla. 1957).

31.    The Receiver shall provide reports when requested by the Court and as reasonably requested by the parties' counsel.

32. The Receiver shall serve until further order of the Court terminating this receivership. The Receiver may resign its position only upon thirty (30) days written notice to all parties of record and upon approval of the Court.

33. The Receiver shall file with the Clerk of this Court as soon as practicable a cash bond of $100 and within two (2) days of the entry of this Order, an additional bond in the sum of One Million Dollars ($1,000,000) with sureties or in cash as approved by the Court.

34. Utility companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, waste water, recycling services, refuse, garbage, television/cable and telephone are directed not to demand security deposits or to discontinue service. The utility companies and other providers are also directed to assist in all requests made by the Receiver and/or his staff in relation to any accounts in the name of CAH 4 or the Hospital and all the addresses associated therewith. These requests include but are not limited to the commencement or cessation of utility service, the transfer of utility service or deposits into the receivership estate, and any other requests made to assist the Receiver in his duties.

35. The Receiver may but shall not be obligated in any manner to prepare or file any delinquent, current or future state or federal income tax returns and shall not be individually held personally responsible for any local, state or federal income, property, payroll or other taxes of CAH 4 or the Hospital except for payroll or sales taxes incurred as a result of the Receiver's administration of the receivership estate. The receivership estate shall not constitute a separate or new taxpayer.

36. The Receiver is empowered to file a voluntary petition for relief pursuant to 11 U.S.C. §301 et seq. for CAH 4 if such is deemed appropriate in the sole discretion of the Receiver in the exercise of his business judgment. CAH 4's officers, directors, managers,

members and/or shareholders are specifically prohibited from taking any action inconsistent with the terms of this Order and from authorizing any action by CAH 4 inconsistent with their respective by-laws or operating agreements as of the entry of this Order.

37.    CAH 4 shall provide notice of this Order to each of its officers, directors, agents, servants, employees, assigns, attorneys, and all persons acting on its behalf, under its direction and control, and/or in active concert or participation with CAH 4.

38.    Communications between counsel for Receiver (if any) and Receiver are privileged, not subject to any exceptions to the attorney-client privilege. For purposes of this paragraph, the "Receiver" includes all persons engaged by the Receiver to assist him in the administration of this receivership.

39.    The Court reserves the right to modify and supplement this Order from time to time as may be deemed necessary and advisable.

40.    Any person or entity filing any pleading or document in this case shall serve the Receiver with such pleading or document and shall inform the Receiver of all related hearing dates.

41.    The Receiver may, at any time, apply to this Court for further or other instructions or for modification of this Order or for further powers necessary to enable the Receiver to perform its duties and administer the Estate in accordance with this Order, and this Order may be modified and supplemented from time to time as the Court may deem necessary and advisable.

42.    This Court explicitly retains jurisdiction, despite any attempted dismissal of this receivership, to hear and rule on all receivership-related issues. See Brown v. R. L. Bivings, 316 P.2d 855 (Okla. 1957).

43.     If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity or enforceability of the lien, priority or other protections authorized or created hereby. Notwithstanding any such modification, vacation or stay, the Receiver shall be entitled to all of the rights, remedies, privileges and benefits granted herein.

44.     To the extent permitted by law, the provisions of this Order shall be binding upon all of the Parties, their respective successors and assigns, including any trustee hereinafter appointed as a representative of the Estate in any subsequent proceedings under the Bankruptcy Code, and all creditors of Inverness and other parties in interest.

45.     Due to the circumstances of this case, this order is entered as a temporary order and shall become a permanent order unless there is a timely objection filed, and after a hearing, the Court finds this order should be modified or vacated. Objections must be filed with the Clerk of this Court no later than 30 days after the entry of this order. This Order shall be served upon the registered service agent of CAH Acquisition Company # 4, Inc. within 5 business days after the entry of this order. To avoid any ambiguity, this order is effective upon its entry and shall remain in full force and effect unless and until further order of this Court.

46.     **ALL PERSONS HAVING NOTICE OF THIS ORDER ARE HEREBY ADVISED THAT THE TERMS OF THIS ORDER, INCLUDING, BUT NOT LIMITED TO, THE INJUNCTIVE RELIEF GRANTED HEREIN, SHALL BE ENFORCEABLE BY CONTEMPT AS WELL AS ANY OTHER MEANS AUTHORIZED BY LAW.**

ENTERED THIS 7th day of February, 2019 at 6:13 o'clock P .m. CST.

**KELLY HAKE**

THE HONORABLE KELLY HAKE
CREEK COUNTY DISTRICT JUDGE

Approved for Entry:

Michael Gibson, OBA # 3346
P.O. Box 205
Sapulpa, OK 74067
(918) 630-0340
gibsonatlaw@yahoo.com

*and*

Patrick J. Malloy, OBA # 5647
MALLOY LAW FIRM
401 South Boston Avenue, Suite 500
Tulsa, OK 74103-3313
(918) 855-5471
pjmiiim@sbcglobal.net

*and*

Mark A. Craige, OBA # 1992
Alexander Sokolosky, OBA # 33614
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK 74103-3313
(918) 592-9800
(918) 592-9801 (Facsimile)
mark.craige@crowedunlevy.com
alex.sokolosky@crowedunlevy.com

*Attorneys for The City of Drumright*

19

_(signature)_

C. David Rhoades, Receiver
401 S. Boston Avenue, Suite 2320
Tulsa, OK 74103
(918)728-3340
(918) 582-7070 (fax)
cdrhoades@turnaroundpro.com

I, Amanda VanOrsdol, Court Clerk for Creek County,
Oklahoma, hereby certify that the foregoing is a
true, correct and full copy of the instrument here-
with set out as appears of record in the Court
Clerks office of Creek County, Oklahoma, This
___8___ day of ___Feb___ 20 _19_
By_____Amanda VanOrsdol
         Deputy              Court Clerk



EXHIBIT 3

IN THE DISTRICT COURT OF CREEK COUNTY
BRISTOW DIVISION
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
CREEK COUNTY BRISTOW OK

MAR 0 7 2019

TIME_____9:05 Am_____
Amanda VanOrsdol, Court Clerk

THE CITY OF DRUMRIGHT, as )
successor-in-interest to the Drumright )
Municipal Healthcare Authority, )
                         )
      Plaintiff, )
                         )
v. )
                         )
CAH ACQUISITION COMPANY # 4, )
INC., a domestic corporation, and )
FIRST LIBERTY BANK, a domestic )
banking corporation, )
                         )
      Defendants. )

Case No. CJ-2019-00001

Judge Kelly Hake

## NOTICE OF ACTION BY RECEIVER
## (REMOVAL OF MEMBERS OF BOARD OF DIRECTORS)

**To:**    **The Board of Directors**
        **CAH Acquisition Company # 4, Inc.**

YOU ARE NOTIFIED that C. David Rhoades, in his capacity as a court-appointed receiver (the "Receiver") over all assets and business operations of CAH Acquisition Company # 4, Inc. ("CAH 4"), does hereby remove all individuals from the Board of Directors of CAH 4.

Pursuant to the Order Appointing Receiver, signed February 7, 2019, and filed in the above-styled cause, the Receiver has full authority to remove any directors from CAH 4's Board of Directors:

The Receiver shall have the sole power and authority, consistent with the terms of this Order, (i) to oversee and make all final decisions concerning the financial affairs relating to the Estate, (ii) to remove any existing directors, and identify and appoint qualified individuals to serve as members of the Board of Directors of the Defendant, (iii) analyze, market and sell any or all of the Assets or any other property of the Estate, and (iv) manage and operate the Estate on a daily basis.

The Receiver does now exercise this authority. All directors of the Board of Directors of CAH 4 are hereby removed.

1



C. David Rhoades
Court-appointed Receiver

Subscribed and sworn before me this __5th__ day of March, 2019.

Notary Public

My Commission Expires:

8-7-2019

[SEAL]

SAMANTHA KNAPP
Notary Public in and for
STATE OF OKLAHOMA
Commission #07007513
Expires: August 7, 2019

2



EXHIBIT

4

## AMENDED AND RESTATED BYLAWS

### OF

### CAH ACQUISITION COMPANY #4, INC.

### d/b/a Drumright Regional Hospital

### An Oklahoma corporation

---

### OFFICES

Section 1.  The principal office of the corporation shall be located at 610 West Bypass, Drumright, OK 74030, or at any place that the Board of Directors by resolution may designate from time to time.  The corporation may have such other offices, either within or without the State of Oklahoma, as the Board of Directors by resolution may designate from time to time.

### PROVISIONS RELATING TO HUD REQUIREMENTS

Section 2.  The purpose or purposes for which the corporation is formed and the business to be carried on and the objectives to be effected by it are (a) to create a private corporation to acquire and to operate Drumright Memorial Hospital, Project Number 118-13004, now known as Drumright Regional Hospital ("Hospital") (b) to enable the financing of the construction of such project with the assistance of mortgage insurance under the National Housing Act, (c) to enter into, perform, and carry out contracts of any kind necessary to, or in connection with, or incidental to, the accomplishment of the purposes of the corporation, including, expressly, any contract or contracts with the Secretary of Housing and Urban Development (HUD) which may be desirable or necessary to comply with the requirements of the National Housing Act, as amended, and the Regulations of the Secretary thereunder, relating to the regulation or restriction of mortgagors as to rents, sales, charges, capital structure, rate of return and methods of operation, (d) to acquire any property, real or personal, in fee or under lease, or any rights therein or appurtenant thereto, necessary for the construction and operation of such project; and (e) to borrow money, and to issue evidence of indebtedness, and to secure the same by mortgage, deed of trust, pledge, or other lien, in furtherance of any or all of the objects of its business in connection with such project.

Section 3.  The corporation shall have the power to do and perform all things whatsoever set out in Section 2 above, and necessary or incidental to the accomplishments of said purposes.  The corporation, specifically and particularly, shall have the power and authority to enter into a Regulatory Agreement setting out the requirements of the Secretary of Housing and Urban Development (HUD), and the terms of such Regulatory Agreement shall take precedence in the event of any conflict with the terms of the certificate of incorporation, these bylaws, and any other bylaws adopted by the corporation.

Section 4. The corporation hereby authorizes and empowers its president and its secretary, or such other person or persons who shall, from time to time, be elected or appointed to serve as the president and secretary of the corporation, to execute and attest the Regulatory Agreement or other documents or papers relating to the project for the corporation.

## STOCKHOLDERS MEETINGS

Section 5. All meetings of the stockholders shall be held at any place, either within or without the State of Oklahoma, as the Board of Directors may designate from time to time. If no designation is made, or if a special meeting is otherwise called, the place of meeting shall be at the principal business office of the corporation. Any such meeting may be adjourned to meet at such time and place as may be designated by the holders of a majority of the shares present or represented by proxy at any such meeting.

Section 6. An annual meeting of the stockholders shall be held for the Election of Directors and for the transaction of any other proper business on the second Tuesday in October of each year commencing with the year 2008. If the meeting date should fall, on a legal holiday, then the meeting shall be held on the next business day following the holiday. The meeting shall be held at such time, between 9:00 a.m. and 5:00 p.m., as is provided in the notice therefor. If the annual meeting for the election of directors is not held on the date designated therefor, the directors shall cause the election to be held at a special meeting of the stockholders as soon thereafter as convenient.

Section 7. Special meetings of the stockholders, for any purpose, may be called by or at the direction of the President, by the Board of Directors, or by the holders of not less than one-fifth (1/5) of all of the outstanding shares of the corporation entitled to vote at such meeting.

Section 8. Written notice of each meeting of stockholders shall state the place, date, and hour of the meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. The written notice shall be given to each stockholder entitled to vote at the meeting not less than 10 nor more than 60 days before the date of the meeting. If mailed, the notice shall be deemed to have been given when deposited in the United States mail, postage prepaid, directed to the stockholder at his address, as it appears on the records of the corporation. An affidavit of the secretary or assistant secretary or of the transfer agent of the corporation that notice has been given shall be prima facie evidence of the facts stated therein in the absence of fraud.

When a meeting of stockholders is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the corporation may transact any business that might have been transacted at the earlier meeting. If the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, a

notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 9. A majority of the outstanding shares of stock of the corporation entitled to vote at a meeting of stockholders, represented in person or by proxy, shall constitute a quorum.

Section 10. If a quorum shall fail to attend any meeting of the stockholders at the time and place for which such meeting was called, or if the business of such meeting shall not be completed, the stockholders present in person, or represented by proxy may adjourn the meeting from day to day or from time to time by a majority vote.

Section 11. At all elections of directors, each stockholder shall be entitled to as many votes in person or by proxy as shall equal the number of his shares of stock multiplied by the number of directors to be elected. Each stockholder may cast all of said votes for a single director or may distribute them among the number to be voted for, or any two or more of them as he may see fit. At all elections of directors, voting by ballot is not required.

Section 12. Any action required or permitted by the law of the State of Oklahoma to be taken at any annual or special meeting of stockholders may be taken without a meeting and without prior notice by a statement of action. The statement of action, in order to be effective, shall set forth the action so taken and shall be signed by all the holders of outstanding stock entitled to vote thereon. In the event that the subject of the statement of action is of the nature which requires the filing of a certificate under any section of the Corporation Code of the State of Oklahoma then the certificate shall state that the written consent of the stockholders has been given.

## DIRECTORS

Section 13. A Board of Directors shall manage the business and affairs of the corporation. The Board shall be composed of one or more members who need not be stockholders. Each director shall hold office until his successor is elected and qualified or until his earlier resignation or removal. Any director may resign at any time upon written notice to the corporation.

Section 14. An annual meeting of the Board of Directors shall be held immediately after, and at the same place as, the annual meeting of stockholders. The annual meeting shall be held for the purpose of electing officers and transacting such other business as may come before the meeting. If, for any reason, such annual meeting of directors is not or can not be held as herein prescribed, the officers may be elected at any meeting of the directors thereafter called for such purpose pursuant to these bylaws.

Section 15. Regular meetings of the Board of Directors, other than annual meetings, may be held at such time and place as shall from time to time be determined by the Board of

against his removal would be sufficient to elect him if then cumulatively voted at an election of the entire Board of Directors.

Section 22. Vacancies on the Board of Directors and newly created directorships resulting from any increase in the number of directors to constitute the Board of Directors may be filled by a majority of the directors then in office. A majority of the directors shall have such authority even though the number of directors in office is than a quorum, or by a sole remaining director. The directors so appointed shall serve until the next election of directors by the stockholders of the corporation.

Section 23. The directors in their capacity as a director shall not receive any stated salary for their services. However, by resolution of the Board of Directors, a fixed sum and expenses, if any, may be allowed for attendance at any regular or special meeting of the Board of Directors. This provision shall not be construed to preclude any director from serving the corporation in any other capacity and receiving compensation therefor.

## COMMITTEES

Section 24. The Board of Directors may designate, by resolution passed by a majority of the whole Board, one or more committees, each committee to consist of one or more of the directors of the corporation. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

Section 25. The Board of Directors shall establish the duties, powers, and authority of each committee and the rules of procedure to be followed by any such committee or the manner of determining such rules. Any committee so established by the Board of Directors shall be subject only to such limitations as may be established by the Board or as may be set forth in the statutes of the State of Oklahoma.

Section 26. The term of office of each member of each a committee shall terminate at the close of the next succeeding meeting of the stockholders at which there is an election of the Board of Directors, or at such earlier time as the member may resign or be removed by the affirmative vote of a majority of the whole Board of Directors.

## OFFICERS

Section 27. The corporation shall have a President, a Vice President, a Secretary, Treasurer and Assistant Secretary, who shall be elected by the Board of Directors. No officer need be a director. The same person may hold any number of offices. Failure to elect the officers annually shall not dissolve the corporation.

5

Directors. After the time and place of such regular meetings shall have been so determined and notice thereof given to all of the directors, no notice of such regular meetings need to be given thereafter.

Section 16. Special meetings of the Board of Directors for any purpose or purposes may be called by or at the direction of the President or any two or more directors. Such meeting shall be held at such time and place as may be designated by the person or persons authorized to call such special meeting. Notice of any special meeting shall be given at least three days previous thereto by written notice delivered personally or mailed to each director at his business address. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail with postage thereon prepaid.

Section 17. A majority of the total number of directors shall constitute a quorum for the transaction of business. The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

Section 18. Members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of such Board of Directors or committee by means of a conference telephone or similar communications equipment. However, the means of communication shall be such that all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at such meeting.

Section 19. Any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing. Any statement of action shall be filed with the minutes of the proceedings of the Board of Directors or committee.

Section 20. If there is less than a quorum of directors at any meeting of the Board of Directors, then a majority of the directors present at the time and place appointed for such meeting may adjourn the meeting from time to time for a period of not more than 30 days. Such adjournment may be made without notice other than oral announcement at the meeting and at adjournments thereof until a quorum shall attend. Any meeting of directors at which a quorum is present may also be adjourned in like manner and on like notice for such time or upon such call as may be determined by vote of a majority of the directors there present. At any adjournment of any such meeting at which a quorum shall be present any business may be transacted which might have been transacted at the meeting as originally called.

Section 21. One or more directors may be removed at a meeting of stockholders called expressly for that purpose. Removal may be made with or without cause by a vote of the holders of a majority of the shares then entitled to vote at an election of directors. However, if less than the entire Board is to be removed, no one of the directors may be removed if the votes cast

4

Section 28. The corporation may have such other officers or agents as may be elected or appointed by the Board of Directors.

Section 29. Each officer of the corporation shall hold his or her office for such period as the directors may determine or, in absence of such determination, for a period of one year and until his successor shall have been elected and qualified or until his earlier resignation or removal. Any officer may resign at any time upon written notice to the corporation. Any of the officers of the corporation may be removed at any time by the affirmative vote of a majority of the whole Board of Directors, with or without cause, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

Section 30. The compensation of the officers shall be fixed by the Board of Directors and, unless fixed for a definite period, may be changed from time to time whenever the Board of Directors may deem such action necessary or advisable. The compensation of employees shall be fixed by the President or in such manner as the Board of Directors may determine.

Section 31. The Chairman of the Board of Directors if elected, or failing his election, the President, shall preside at all meetings of the Board of Directors and shall perform such other duties a may be prescribed by the Board of Directors.

Section 32. The President shall be the chief executive officer and general manager of the corporation, shall have general supervision and direction of the business of the corporation, and shall preside at all meetings of the stockholders and directors at which he is present. The President is vested with the right and authority to vote any stock of any other corporation, foreign or domestic, owned or held by the corporation at any meeting of the stockholders of such corporation. The President may also execute waivers of notice or proxies relating thereto to the same extent as though he were the owner of record thereof and shall perform such other duties as may be prescribed by the Board of Directors.

Section 33. The Board of Directors shall select and appoint a qualified hospital administrator to serve as Vice President and to be its direct executive representative in the management of the Hospital. The Vice President shall also serve as the Chief Executive Officer of the Hospital. The Vice President/Chief Executive Officer shall be given the necessary authority and held responsible for the management of the Hospital, subject only to the policies enacted by the Board of Directors or any committees to which the Board of Directors has delegated power for such action. He or she shall be an *ex officio* voting member of the Board of Directors, an *ex officio* voting member of all Hospital committees, an *ex officio* nonvoting member of all organizations that are associated or affiliated with the Hospital and an *ex officio* nonvoting member of all medical staff committees. He or she shall act as the duly authorized representative of the Board of Directors in all matters relating to the Hospital except those in which the Board of Directors has formally designated some other person or group to act.

Section 34. The Secretary of the corporation shall be responsible for the custody of the corporate seal and shall cause to be recorded all the proceedings of the meetings of the stockholders and directors in a book to be kept for that purpose. He or she shall give or cause to be given appropriate notice in accordance with these bylaws or as required by law, shall act as custodian of all corporate records and reports and shall perform all duties incident to the office and such other duties as may be assigned by the President or the Board of Directors and may delegate any duties to the Assistant Secretary. The Secretary shall perform such other duties as may be prescribed by Board of Directors.

Section 35. The Treasurer of the corporation shall be responsible for custody of the funds of the corporation and shall maintain them in such bank or other depository as the Board of Directors may designate. The Treasurer shall cause to be kept accurate books of account of the business of the corporation, shall make periodic reports thereof, and shall perform such other duties as prescribed by the Board of Directors.

Section 36. In the event of the absence of any officer of the corporation or for any other reason, the Board (by majority vote) may delegate the powers or duties of such officer in whole or in part to any other officer or to any director.

## CORPORATE STOCK

Section 37. Every holder of stock in the corporation shall be entitled to have a certificate signed by the President , and by the Secretary or the Assistant Secretary of the corporation, certifying the number of shares owned by him in the corporation. If such certificate is countersigned (1) by a transfer agent other than the corporation or its employee, or (2) by a registrar other than the corporation or its employee, any other signature on the certificate may be a facsimile. In the event that any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 38. A certificate representing shares of stock of the corporation may be transferred only:

(1) by delivery of the certificate endorsed, either in blank or to a specified person, by the person appearing by the certificate to be the owner of the shares represented thereby; or

(2) by delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of

the shares represented thereby, such assignment or power of attorney being either in blank or to a specified person; or

(3)     by delivery of the certificate with assignment endorsed thereon or in a separate instrument signed by a trustee in bankruptcy, receiver, guardian, executor, administrator, or other person duly authorized by law to transfer the certificate on behalf of the person appearing by the certificate to be the owner of the shares represented thereby.

The corporation or its agents may require reasonable proof of the authenticity of the signatures appearing upon instruments provided for the purpose of effecting transfer of any such certificate.

Section 39.  The following shall apply in the determination of the stockholders of the corporation:

(a)     The Board of Directors may fix a record date in order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof.  The record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and the record date shall not be more than 60 nor less than 10 days before the date of such meeting.  If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the next day preceding the day on which notice is given.  If notice is waived, the record date shall be the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting except that the Board of Directors may fix a new record date for the adjourned meeting.

(b)     The Board of Directors may fix a record date in order that the corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting.  However, the record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, nor shall it be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by the laws of Oklahoma, shall be the first date on which a signed written consent is delivered either to the President or to the registered agent.  Delivery to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board of Directors and if prior action by the Board of Directors is required by the laws of Oklahoma, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)    The Board of Directors may fix a record date in order that the corporation may determine the other distribution rights or the stockholders entitled to exercise any rights in respect to any change, conversion or exchange of stock, or for the purpose of any other lawful action. The record date shall not precede the date upon which the resolution fixing the record date is adopted, and such record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 40. The corporation shall be entitled to treat the holder of record of any share or shares of stock as the owner in fact thereof, and the Board of Directors may in its discretion hold such owner of record to be entitled to receive dividends and to vote as such owner. The corporation shall not be bound to recognize any equitable or other claim to, or interest in, such shares on the part of any person whether or not it shall have express or other notice thereof, save as expressly provided by law.

Section 41. No stockholder may transfer his common stock to any person not already a stockholder of the corporation without first giving notice to the corporation and to the existing stockholders of his intention to do so and of the terms and consideration for the same. Such notice may be by actual written notice to each stockholder or by posting the same in a conspicuous place in the registered office of the corporation. For fifteen (15) days thereafter, the corporation, acting through its Board of Directors, shall have the prior right to buy the said stock on the said terms. If such preferential right is not exercised within said time, then during the next fifteen (15) days any stockholder or stockholders may exercise such preferential rights. Whenever such preferential rights are exercised by more than one stockholder without an agreement between them as to the proportion of stock to be acquired by each, then they shall acquire such stock in proportion to their already existing stockholdings. If, at the end of thirty (30) days, no stockholder or stockholders have exercised such preferential rights, then the stock may be transferred to any person whatsoever on the said terms. Notwithstanding anything to the contrary herein provided in this section, the transfer of shares of a stockholder in the corporation may be made subject to such additional or lesser restrictions as may be imposed by written agreement by and between the registered owners of such stock and the corporation. Upon the execution of any such agreement, all certificates of stock of the corporation shall have endorsed upon them appropriate language referring to such agreement and a copy of such agreement shall be filed in the office of the secretary of the corporation.

## GENERAL

Section 42. Pertinent provisions of the law of the State of Oklahoma, where applicable, shall take precedence over these bylaws.

Section 43. The power to adopt, alter, or repeal the bylaws of the corporation is vested in the corporation's initial Board of Directors. Thereafter, subject always to the restrictions and

limitations of the provisions relating to the requirements of the Secretary of Housing and Urban Development (HUD) as set forth in Section 2, 3 and 4 above, the bylaws of the corporation may be altered, amended or repealed, or new bylaws may be adopted (a) by a majority vote of the stockholders entitled to vote or (b) by the Board of Directors. Notice of any change of the bylaws by the Board of Directors shall be given each stockholder having voting rights within 10 days after the date of such action by the Board of Directors.

Section 44. The corporation shall not be required to have a seal, but in the event it chooses to do so, the same shall be circular in form and shall have inscribed thereon the name of the corporation and the words "Corporate Seal" and "Oklahoma".

## MEDICAL STAFF

Section 45. In accordance with applicable laws and regulations, the Board of Directors shall ensure that the Hospital's medical staff is accountable to the Board of Directors for the quality of care provided to patients of the Hospital. And that the members of the medical staff and those in the allied health practitioner category shall abide by these bylaws and all Hospital rules and regulations. The medical staff shall be organized under, and shall function in accordance with, its bylaws, rules and regulations, as same are approved by the board of directors. In the case of any conflict between such medical staff bylaws, rule and regulations and the rules and regulations of the Hospital or these bylaws, the Board of Directors will be called upon to resolve the conflict.

Section 46. The Board of Directors shall appoint physicians, dentists and podiatrists to the medical staff , shall grant privileges to appropriately licensed specialists , such as nurse practitioners and physician assistants, to attend patients in the Hospital, but who are not members of the medical staff. The medical staff shall make recommendations to the board of Directors regarding medical staff and allied health practitioner appointments, membership and clinical privileging.

Section 47. In the event that a candidate's application for appointment or the application of member of the Hospital's medical staff for reappointment is denied or the privileges of the Hospital's medical staff or an appropriately licensed specialist who has been granted privileges to atte3nd patients in the Hospital are curtailed, suspended or revoked or in any other manner modified, the candidate, member or specialist shall be so notified in writing of the decision and the reasons for such denial or modification.

Section 48. Criteria for selection shall be as stated in the medical staff bylaws, rules and regulations and shall include factors such as individual character, clinical competence, education, experience and judgment.

Section 49. The Board of Directors may deny, withhold or terminate or diminish clinical privileges for cause. Although an open staff policy shall generally prevail, consideration of

appointment or reappointment, as the case may be, and the granting of clinical privileges may, in the discretion of the Board of Directors, also involve the following criteria: (i) the availability of health care professionals presently on the medical staff or serving as allied health practitioners sufficient in number to serve the current or foreseeable needs of the of the Hospital's patients; and (ii) the availability of sufficient Hospital facilities, personnel and support services to accommodate the clinical privileges requested by the applicant and those currently held by members of the medical staff or allied health practitioners, as the case may be. In applying these criteria, the Board of Directors shall consider, among other factors, the extent to which granting clinical privileges will have an adverse impact on the quality of care furnished to patients of the Hospital including, but not limited to, the ability of the medical staff to conduct adequate peer review of medical staff members and those granted privileges in the allied health practitioner category.

Section 50. The Hospital's medical staff shall operate as a part of the Hospital, either as a whole or through its committees, if any.. The heads of any such committees, as well as all medical staff officers, are responsible and accountable to the Board of Directors for the discharge of those duties and responsibilities delegated to them by the Board of Directors, the medical staff bylaws, rules and regulations, Hospital policies, rules and regulation and these bylaws. The chairperson of all medical staff committees will be appointed by the chief of the medical staff , subject to approval by the entire medical staff., In approving the selection of any such chairperson, the medical staff shall apply such criteria as it may establish from time to time, including the aforesaid qualities of training, experience, administrative ability and a demonstrated willingness to actively participate in the improvement of quality of care, including peer review. And to cooperate with other members of the medical staff, the Board of Directors and the Hospital administration. Recall of a medical staff officer or committee chairperson may be initiated for a specified cause (i.e. failure to properly discharge responsibilities, misconduct, abusive behavior, behavior disruptive to the operations of the Hospital or inability to discharge assigned responsibilities due to physical or mental impairment) by the Board of Directors. Recall will be considered at a special meeting of the medical staff and, in accordance with medical staff bylaws, any vote taken shall occur as soon as reasonable practical but in any event within thirty (30) days of the recall request of the Board of Directors. In the event the medical staff fails to vote within the prescribed thirty (30) days, the Board of Directors may recall the officer or member by a vote of two-thirds (2/3) of the entire Board of Directors. No such recalled officer or chairperson will have any appeal or other procedural rights under the medical staff bylaws.

Section 51. Physicians, dentists, podiatrists and/or allied health practitioners serving the Hospital in administrative capacities or otherwise are employed by the Hospital which require appointment to the Hospital's medical staff shall achieve appointment by the same procedures of application, review and appointment applicable to other appointees. However, the medical staff does not have the authority to hire or terminate employment of such physicians, dentists, podiatrists and/or allied health practitioners and the termination of any such employment is governed solely by the terms of such individual's employment agreement and does not affect the

exercise of clinical privileges or , unless otherwise stated, entitle the individual to any appeal or procedural rights set forth in the medical staff bylaws.

Section 52. The Board of directors, after consultation with the medical staff, may designate certain professional and administrative services that are to be provided through exclusive and/or nonexclusive contractual arrangements with certain physicians, physician groups, and other providers. To the extent applicable such providers of professional services must meet the same membership qualifications as any other applicant or member.

Section 53. The medical staff shall have bylaws, rules and regulations that are consistent with these bylaws. Such bylaws, rules and regulations are to be adopted by the Hospital's medical staff but are subject to the approval of the Board of Directors. The Board of Directors retains the right to rescind any authority or function delegated to the medical staff. Medical staff bylaws shall be reviewed periodically by the medical staff and, if amended, shall be approved by the Board of Directors. The medical staff shall make recommendations to the Board of Directors with respect to the structure of the medical staff, the procedures used to review credentials and delineate clinical privileges, the procedures by which membership on the medical staff may be terminated and procedural rights in accordance with fair hearing procedures.

Section 54. The medical staff shall make recommendations to the Board of Directors regarding quality improvement activities of the medical staff as well as the process used to oversee, evaluate and review such activities. The Board of Directors shall require the medical staff to have a procedure in place for reviewing the quality of patient care provided by members of the medical staff and all other individuals who provide patient care and services. The Board of Directors through the President and Vice President, shall be responsible for providing the medical staff with the administrative assistance necessary to conduct quality improvement activities in accordance with the Hospital's quality improvement plan. The nature and frequency of submission of required reports shall be in accordance with the Hospital's quality improvement plan.

## HOSPITAL STAFF

Section 55. The Board of Directors, through the Hospital's quality improvement plan, shall assure that all individuals who provide patient care services, but who are not subject to the medical staff privilege delineation process, are competent to provide such services.

## CONFLICTS OF INTEREST

Section 56. No member of the Board of Directors shall be disqualified from holding any office in the corporation by reason of any interest in any concern ("interest" meaning any personal interest, interest as director, officer, stockholder, shareholder, partner, manager, trustee o4r beneficiary and "concern" meaning any corporation, association, trust, partnership, limited liability entity, firm person or any other entity other than the corporation). A director or officer of

the corporation shall not be disqualified from dealing, either as a vendor, purchaser or otherwise, or contracting or entering into any other transaction by reason of the fact that any director or officer of the corporation has an interest in the concern with which such transaction is being entered into, provided the following requirements are satisfied:

    a.    The interest of such director or officer is fully disclosed to the Board of Directors;

    b.    Such transaction is duly approved by the Board of Directors not so interested or connected as being in the best interests of the corporation;

    c.    Payments, if any, to the director or officer, are reasonable and do not exceed fair market value;

    d.    No interested director or officer may vote or lobby on the matter or be counted in determining the existence of a quorum at the meeting at which such transaction may be authorized; and

    e.    The minutes of meetings at which such votes are taken shall record such disclosure, abstention and rationale for approval.

## COMPLIANCE

Section 57. The Board of Directors recognizes that the sole stockholder has established a corporate compliance program ("Program") for its affiliate hospitals, the goal of which is to assure compliance, to the greatest extent reasonably possible, with all applicable federal, state and local laws and regulations. The Program specifically focuses on risk identification and management, the promotion of good corporate citizenship, the commitment to upholding a high standard of ethical legal business practices and the prevention of misconduct. Accordingly, the Board of Directors hereby affirms its commitment to the Program and, working through the sole stockholder's compliance officer and the affiliate compliance officer appointed by the Hospital, shall assure that the Program remains robust and is provided the resources necessary to its operation and success.

## PROCEDURES

Section 58. The Board of Directors and its committees may adopt rules and procedures that are consistent with these bylaws.

## BYLAWS REVIEW

Section 59. These bylaws shall be reviewed by the Board of Directors on a periodic basis.

## BYLAWS REVISION HISTORY

ADOPTED:  February 15th, 2008
AMENDED AND RESTATED:  October 12th, 2010

_(signature)_

ASSISTANT SECRETARY



EXHIBIT
5

# Health Acquisition Company LLC., Resolution Re Bankruptcy Filing

### RESOLUTION OF HEALTH ACQUISITION COMPANY LLC

The Managers of Health Acquisition Company, LLC, a West Virginia Limited Liability Company agrees as follows;

**WHEREAS** it is in the best interest of this Corporation to file a voluntary petition in the United States Bankruptcy Court under Chapter 11 of Title 11 of the United States Code for the following facilities;

CAH ACQUISITION COMPANY # 2 LLC, A Delaware Limited Liability Company (Oswego)
CAH ACQUISITION COMPANY # 3 LLC, A Delaware Limited Liability Company (Horton)
CAH ACQUISITION COMPANY # 4 Inc., An Oklahoma Corporation (Drumright)
CAH ACQUISITION COMPANY # 5 LLC, A Delaware Limited Liability Company (Hillsboro)
CAH ACQUISITION COMPANY # 6 LLC, A Delaware Limited Liability Company (i-70)
CAH ACQUISITION COMPANY # 7 LLC, A Delaware Limited Liability Company (Prague)
CAH ACQUISITION COMPANY # 11 LLC, A Delaware Limited Liability Company (Lauderdale)
CAH ACQUISITION COMPANY # 12 LLC, A Delaware Limited Liability Company (Fairfax)
CAH ACQUISITION COMPANY # 16 LLC, A Delaware Limited Liability Company (Haskell)

**RESOLVED** that Health Acquisition Company LLC, which is the owner of 80% of the interest in the entities previously listed, hereby consents to and approves the filing of a voluntary Chapter 11 bankruptcy petition on behalf of the Corporations;

**RESOLVED FURTHER,** that Jorge Perez is authorized and directed to execute and deliver all documents necessary to effectuate the filing of a voluntary Chapter 11 bankruptcy petition on behalf of the Corporation;

**RESOLVED FURTHER,** that Jorge Perez is authorized and directed on behalf of the Corporation and in its name to take all actions and execute all documents deemed necessary or desirable in order to carry out and perform all acts and deeds in connection with the Corporation's bankruptcy case;

**RESOLVED FURTHER,** that the Corporation is authorized and directed to retain the law firm of Spillman Thomas and Battle to represent the Corporation in all aspects of its bankruptcy case.

Signed this the 12 day of March 2019;

Jorge Perez, For Health Acquisition Company LLC.

EXHIBIT
5

Boyce & Bynum Pathology Lab
ATTN: Managing Agent/Officer
PO Box 7406
Columbia, MO 65205-7406

McKesson Corporation - RX
ATTN: Managing Agent/Officer
1950 Stemmons Hwy., #5010
Dallas, TX 75207-3199

Rural Community Hospitals of Am
ATTN: Managing Agent/Officer
700 Chappell Road
Charleston, WV 25304-2704

Cardinal Health - Pharm
ATTN: Managing Agent/Officer
7920 Elmbrook Drive, #100
Dallas, TX 75247-4933

Medline Industries, Inc.
ATTN: Anne Kisha
One Medline Place
Mundelein, IL 60060-4486

Shared Medical
ATTN: Managing Agent/Officer
209 Limestone Pass
Cottage Grove, WI 53527-8968

Cerner Corporation
ATTN: Managing Agent/Officer
2800 Rockcreek Parkway
Kansas City, MO 64117-2521

Midland Funding, LLC
ATTN: Managing Agent/Officer
PO Box 2011
Warren, MI 48090-2011

The Medical Protective Company
ATTN: Managing Agent/Officer
23289 Network Place
Chicago, IL 60673-1232

City of Drumright
ATTN: Managing Agent/Officer
122 W. Broadway
Drumright, OK 74030-3606

OG&E
ATTN: Managing Agent/Officer
PO Box 24990
Oklahoma City, OK 73124-0990

US Foodservice
ATTN: Managing Agent/Officer
PO Box 973118
Dallas, TX 75397-3118

Creek County Treasurer
ATTN: Managing Agent/Officer
317 East Lee, Room 201
Sapulpa, OK 74066-4325

Oklahoma Blood Institute
ATTN: Managing Agent/Officer
Dept #960115
Oklahoma City, OK 73196-0001

Acquisition Company 4, Inc.
ATTN: Managing Agent/Officer
PO Box 953119
Saint Louis, MO 63195-3119

First Liberty
ATTN: Managing Agent/Officer
9601 N. May Ave.
Oklahoma City, OK 73120-2710

Oklahoma Tax Commission
ATTN: Managing Agent/Officer
PO Box 26920
Oklahoma City, OK 73126-0920

Thomas W. Waldrep, Jr.
Waldrep LLP
101 S. Stratford Road, Ste. 210
Winston-Salem, NC 27104-4224

iHealthcare, Inc.
ATTN: Managing Agent/Officer
3901 NW 28th St., 2nd Floor
Miami, FL 33142-5609

Psychiatric Medical Care
ATTN: Managing Agent/Officer
PO Box 305172, Dept. #141
Nashville, TN 37230-5172

Jorge Perez
PO Box 953119
Saint Louis, MO 63195-3119

LGMG, LLC
ATTN: Managing Agent/Officer
11063-D S. Memorial Drive, #483
Tulsa, OK 74133-7766

Reboot, Inc./HIPPA Guard
ATTN: Managing Agent/Officer
PO Box 775535
Chicago, IL 60677-5535